Filed 10/14/14  Wooden v. Wooden CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ANDREA WOODEN,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHARON WOODEN et al.,<br><br>        Defendants and Appellants. | B251358<br><br>(Los Angeles County<br>Super. Ct. No. BC476652)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING,<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 22, 2014, be modified as follows:

At the end of line 2 of page 16, after the sentence ending "pursuant to section 473.5," add as footnote 11 the following footnote:

> [11]Respondent's motion to strike exhibits 1 and 2 from appellants' reply brief is granted as to exhibit 1.  There is no exhibit 2.

There is no change in the judgment.  Respondent's petition for rehearing is denied.

_____          _____          _____

PERLUSS, P. J.          ZELON, J.          SEGAL, J.[*]

---

[*]        **Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.**

Filed 9/22/14 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ANDREA WOODEN, | B251358 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC476652) |
| v. | |
| SHARON WOODEN et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed in part and reversed in part.

Sharon Wooden, in pro. per., and for Defendants and Appellants.

Andrea Wooden, in pro. per., for Plaintiff and Respondent.

_____

**INTRODUCTION**

Andrea Wooden sued her sister, Sharon Wooden, her brother-in-law, Isaac Richard, and her nephew, Isaac Richard III ("Tre"), alleging twelve causes of action.[1] After Sharon, Isaac, and Tre failed to respond to the complaint, the trial court entered their defaults and subsequently entered a $300,000 default judgment against them. Sharon, Isaac, and Tre moved to vacate the defaults and the default judgment. The trial court denied their motion. Sharon, Isaac, and Tre appeal. We affirm the order denying the motion by Isaac and reverse the order denying the motion by Sharon and Tre.

**FACTUAL AND PROCEDURAL BACKGROUND**

Andrea, Sharon, and Charlene Kobrine are sisters. Sharon and Kobrine are practicing attorneys. Andrea graduated from law school but is not licensed to practice law. In 2004 the three sisters inherited an apartment building previously owned by their mother. Andrea resided in the apartment building, although Sharon claims Andrea has never paid rent. The family has been involved in internecine litigation over the apartment building since 2008.

A. *The Underlying Action*

Andrea, representing herself, filed this action against Sharon, Isaac, Tre, and Kobrine.[2] Isaac, 55, is Sharon's husband, and Tre, 20, is their son. Andrea claimed that

---

[1]  Because Andrea and Sharon share the same last name, and Isaac Richard and his son share the identical name except for the suffix, for convenience and clarity we refer to Andrea, Sharon, and Isaac by their first names, and to Isaac Richard III by his nickname "Tre." (See *Farmers New World Life Ins. Co. v. Rees* (2013) 219 Cal.App.4th 307, 310, fn. 1; *Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1.)

[2]  Andrea also named as defendants Gregory Sproul, an attorney who represented the sisters' father in an unlawful detainer action against Andrea in 2008, and Eric Lee, President and CEO of the Southern Christian Leadership Conference of Southern

2

Sharon, Isaac, and Tre impermissibly entered her apartment in the building and wrongfully removed all of her personal property, as well as personal property that had belonged to their mother. Andrea asserted causes of action for wrongful eviction, fraud, embezzlement, trespass, conversion, intentional infliction of emotional distress, negligent infliction of emotional distress, libel, slander, negligence, and breach of "California statute."

   B.  *Service of the Complaint*

   On May 31, 2012 a Los Angeles County deputy sheriff personally served Isaac with the complaint at the apartment building in Los Angeles. Isaac concedes that a sheriff served him with "a package of documents."

   On September 11, 2012 a process server personally served the summons and first amended complaint on an individual who, according to the process server, acknowledged he was Tre, at the family's home address in Piedmont, California where Sharon, Isaac, Tre, and another son resided. At the same time, the process server attempted to serve Sharon by substituted service by delivering the summons and first amended complaint to the same individual at the residence, after three attempts at personal service between August 30, 2012 and September 7, 2012. Describing the delivery and service of the documents at the residence, the process server stated in a subsequent declaration: "I checked with the tenants upstairs and they verified the fact that the subject lived downstairs and that the subject was currently at home. I went to the downstairs unit and a male (45 years/5'11"/200 lbs/Black/male/black hair) answered the door. He acknowledged that he was the subject and I gave him the papers. When he realized that he was being served, he became angry and started toward me. He chased me down the street and threw the papers at me. I told him that he was served and that I was sub-

---

California, who Andrea alleged performed work on and resided in the apartment building. Andrea dismissed the complaint without prejudice as to Kobrine, Sproul, and Lee.

3

serving him with papers for Sharon Wooden."[3] The process server also mailed Sharon a copy of the summons and first amended complaint to the same address.

### C. *Default and Default Judgment*

Isaac, Sharon, and Tre did not respond to the complaint. On August 16, 2012 the court clerk entered Isaac's default. On October 23, 2012 the clerk entered Sharon's default and Tre's default. On December 11, 2012 the court entered a default judgment in favor of Andrea and against Isaac, Sharon, and Tre in the amount of $300,000.

On January 7, 2013 a process server mailed the notices of entry of judgment to Sharon, Isaac, and Tre at their home address in Piedmont. That same day, Andrea sent Sharon, Isaac, and Tre a Christmas card addressed to all of them. The holiday message read: "Pursuant to an order from the L.A. County Superior Court, you are hereby notified that a judgment has been entered against you in the matter mentioned above . . . ." Sharon, Isaac, and Tre contend that receipt of the Christmas card was the first time they received any notice of the action.

### D. *The Motion To Vacate*

On May 3, 2013 Sharon, Isaac, and Tre, represented by counsel other than Sharon or Kobrine, filed a motion to vacate the default and default judgment, and requested leave to file and serve their answer and cross-complaint. In their motion they argued (1) the judgment against Sharon and Tre (but not Isaac) was void pursuant to Code of Civil Procedure section 473, subdivision (d),[4] because they were not properly served; (2) Isaac (but not Sharon or Tre) was entitled to mandatory or discretionary relief pursuant to section 473, subdivision (b); and (3) Sharon and Tre (but not Isaac) were entitled to

---

**3** Although the process server's declaration does not specifically identify Tre as the "subject," the most reasonable inference is that he was. The top of the declaration reads "Name: Isaac Richard III & Sharon Wooden." Isaac would not have been a "subject" of the service because he had already been served.

**4** All further statutory references are to the Code of Civil Procedure.

equitable relief because of extrinsic fraud or mistake.

Isaac stated in his declaration in support of the motion that, upon receiving the summons and amended complaint from the sheriff, it "looked to [him] like [Andrea] was taking some legal action against . . . Sharon and [Kobrine]," so he called Sharon, "who, as an attorney, generally handles all of [the] family's legal matters . . . ." He stated that he told Sharon that Andrea "was trying to serve her or her sister, [Kobrine], with some papers by serving me," and "Sharon told me that I did not need to worry about the papers" because Andrea "was not able to serve [Sharon] or [Kobrine] with papers by serving me." Isaac did not recall if he brought the papers with him to their home in Piedmont, or whether he "mislaid or discarded the papers." Isaac stated that he was "surprised, shocked and disappointed that [Andrea] not only sued me, but also obtained a judgment against me." Sharon stated in her declaration, "I have a vague recollection of Isaac calling [me] sometime in 2012, telling me that [Andrea] was attempting service of papers on [me] by serving him at" the apartment building in Los Angeles, and that she told Isaac "that he need not worry about the papers, because if it was a complaint, she would have to serve me with it personally." Sharon added, "To the extent I was wrong about the service issues, it was certainly my fault and not the fault of Isaac."

Both Sharon and Tre stated in their declarations that they were not properly served. Tre explained that he was in class at college at the time the proof of service states he was served,[5] and that he too was "surprised, shocked and disappointed that [Andrea] not only sued me, but also obtained a judgment against me." Sharon argued that the process server could not have served Tre because (1) Tre was in class on September 11, 2012 at the time he was allegedly served, (2) Tre is 18 years old, and the proof of service describes the individual served as 45 years old, and (3) if the process server served anyone at the Piedmont residence, the recipient of the documents would have been

[5]    A student in Tre's General Psychology class at Chabot College in Hayward, California submitted a declaration stating that she sat next to Tre all semester, and that Tre never missed a class "until he broke his ankle sliding into second base during a Chabot fall baseball game" on September 18, 2011.

Sharon and Isaac's younger son, who "is only 13 years old and therefore substitute service would be improper." Sharon also stated that she did not receive the summons and complaint in the mail, and that, as "a lawyer for thirty years," she "certainly would not have ignored a lawsuit against [her] husband and son." She claimed that "the process server's declaration regarding service is likely tainted with bias" because "[t]he proof of service states that no fee was charged for service . . . ."

Kobrine also submitted a declaration in support of the motion to vacate. She stated that Andrea "has a history of making frivolous claims and misrepresenting facts in my dealings with her pertaining to the probate of my mother's estate and related legal matters. [Andrea] has in the past, claimed to have mailed documents to me and not done so. [¶] . . . [¶] It would not surprise me if the proofs of service filed in the case as they pertain to Sharon and Tre are false."

In opposition to the motion, Andrea argued that Sharon, Isaac, and Tre were properly served and had notice of the action, that Isaac was not entitled to relief under either the mandatory or discretionary provision of section 473, and that Sharon and Tre were not entitled to equitable relief. Andrea explained that Sharon graduated UC Berkeley School of Law, Boalt Hall, when she was 22 years old, clerked for a semester with Chief Justice Rose Bird, and has worked in the criminal law division of the Office of the Attorney General since 1985. Andrea stated that, as a "highly skilled and experienced appellate lawyer," Sharon "must understand the importance of filing dates . . . ." Andrea also argued that Isaac, who earned a Masters in Business Administration from Columbia University, worked as a bond trader, and "was elected to the Pasadena City Council," was "not a lay individual." With respect to service on Tre, Andrea pointed out that, according to the process server, the person who answered the door chased him down the street and threw the papers at him, and that "[o]nly a competent person who understands the significance of a summons and complaint would become angry. Considering the declaration of the process server, it[']s more likely that the process server served Isaac . . . , who had already been served, [and] who had knowledge of the complaint . . . ." Andrea also explained that the proof of service states the process server

charged no fee because Andrea had prepaid him.

On July 16, 2013 the trial court denied the motion. The court ruled that Sharon, Isaac, and Tre had "failed to present credible evidence and [had] failed to meet their burden of demonstrating that the defaults and default judgment were taken against them through mistake, inadvertence, surprise and/or excusable neglect." On September 6, 2013 Sharon, Isaac, and Tre filed a timely notice of appeal.

## DISCUSSION

### A. *Standard of Review*

"'The standard for appellate review of an order denying a motion to set aside under section 473 is quite limited. A ruling on such a motion rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice.'" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200, citing *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118.) Nevertheless, although we review a ruling on a motion pursuant to section 473 to vacate a default and default judgment for an abuse of discretion, an order denying relief "'is scrutinized more carefully than an order permitting trial on the merits.' [Citations.]" (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981; see *Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 679 ["[b]oth grants of set aside motions and denials are still tested under the abuse of discretion standard, but the cases have evolved a somewhat stricter standard for review of denials of set aside motions than grants of them"].) We also review an order denying relief pursuant to section 473.5[6] or on equitable grounds for abuse of discretion, although "'[w]hether a judgment is void due to improper service is a

**6** Section 473 authorizes relief from default based on "mistake, inadvertence, surprise, or excusable neglect" (subd. (b)) or where the judgment is void (subd. (d)). Section 473.5, subdivision (a), authorizes relief from default where "service of a summons has not resulted in actual notice to a party in time to defend the action . . . ."

question of law that we review de novo.' [Citation.]" (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 182; see *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858; *Ellard v. Conway* (2001) 94 Cal.App.4th 540, 547.) On appeal from an order granting or denying a motion to vacate a default judgment, we defer to the trial court's factual findings if they are supported by substantial evidence. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828.)

B.       *The Trial Court Did Not Abuse Its Discretion in Denying Isaac's Motion To Vacate*

Isaac concedes that he was properly served. He does not argue that he did not have notice of the action pursuant to section 473.5, or that he is entitled to equitable relief because of extrinsic fraud or mistake. Isaac argues only that he is entitled to mandatory or discretionary relief under section 473, subdivision (b).

1.       Isaac's Motion Was Timely

A motion to vacate entry of a default and a default judgment pursuant to section 473, subdivision (b), must be filed within six months of the entry of the default judgment. Andrea argues that the motion was untimely because Isaac did not file it within six months of the entry of default. Andrea is measuring the six-month period from the wrong date.

As long as the moving party files the motion within six months of the default judgment, the motion is timely. "[W]hen the motion for relief is filed within six months of the default *judgment*, but more than six months after entry of the underlying default . . . the statute allows six months from the entry of the *judgment* to obtain relief from *both* the judgment and the underlying default." (*Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179 Cal.App.4th 868, 892; see *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 910, fn. 2 ["when a default judgment is vacated pursuant to . . . section [473], the trial court is also required to set aside the underlying default"]; *Sugasawara v. Newland* (1994) 27 Cal.App.4th 294, 297 ["[u]nless the default itself is

8

vacated, little is gained by vacating the default judgment"].)  Isaac filed his motion to vacate on May 3, 2012, which was within six months of the entry of the default judgment on December 11, 2012.  Therefore, Isaac's motion was timely and he was entitled to seek relief from both the default and the default judgment under section 473, subdivision (b).

> 2. Isaac Was Not Entitled to Relief Under the Mandatory Provision
> of Section 473, Subdivision (b)

The mandatory provision of section 473, subdivision (b), states: "[T]he court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, *unless* the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."  (Italics added.)  Mandatory relief under section 473, subdivision (b), is available only if the client "is totally innocent of wrongdoing and the attorney was the sole cause of the default or dismissal."  (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 916; see *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1248.)  "[T]he mandatory provision of section 473, subdivision (b), 'protects only the innocent client [and] provides no relief for the culpable client who participates in conduct which led to the default,'" and "[i]f the trial court finds that the moving party's misconduct was a contributing cause of the default, that party 'cannot rely on the mandatory relief provision of section 473.'  [Citation.]"  (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 400; but see *Gutierrez v. G & M Oil Co., Inc.* (2010) 184 Cal.App.4th 551, 557-558 [noting that some cases "have restricted the statute only to cases where the party against whom the judgment is taken is 'totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal,'" while "other Court of Appeal decisions have indicated that the provision is available to clients who may be at some fault in allowing the dismissal or default, just as long as the client is

9

not guilty of intentional misconduct in contributing to the adverse result"].)

"The court's determination of whether the default was caused by the attorney's mistake, inadvertence, surprise, or neglect is in part a credibility determination. [Citation.] 'Credibility is an issue for the fact finder . . . ; we do not reweigh evidence or reassess the credibility of witnesses. [Citation.] . . . When . . . "the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the trial court, the trial court's finding is conclusive on appeal. . . ." [Citation.]' [Citation.]" (*Cowan v. Krayzman*, *supra*, 196 Cal.App.4th at p. 915; see *Benedict v. Danner Press* (2001) 87 Cal.App.4th 923, 928 ["[w]e affirm the trial court's finding on the causation issue so long as it is supported by substantial evidence"].)

In *Cowan*, the Court of Appeal affirmed the denial of relief under section 473, subdivision (b), because substantial evidence supported the trial court's credibility determination that the attorney's mistake, inadvertence, surprise, or neglect did not cause the default. The court held that the attorney's declaration of fault he "'reasonably believed'" his client's statement that he had not been properly served was insufficient to show that the attorney was the "sole cause" of dismissal and that the client was "totally innocent." (*Cowan v. Krayzman*, *supra*, 196 Cal.App.4th at pp. 910, 916; see *Carmel, Ltd. v. Tavoussi*, *supra*, 175 Cal.App.4th at p. 399 ["[w]here the facts are in dispute as to whether or not the prerequisites of the mandatory relief provision of section 473, subdivision (b), have been met, we review the record to determine whether substantial evidence supports the trial court's findings"].) Similarly here, the trial court impliedly found that Sharon was not the sole cause of Isaac's default and that Isaac was not "totally innocent," even though Sharon, whom the court found not credible, stated in her declaration that she had advised Isaac service was improper. Isaac did not read the document, did not save the documents to show to Sharon later, and did not show the documents to anyone else. Had Isaac taken any of these relatively basic actions, he would have learned that he was a party to the lawsuit and had to respond to the complaint.

Moreover, Sharon's declaration did not "unequivocally admit error" (*Cowan v.*

10

*Krayzman*, *supra*, 196 Cal.App.4th at p. 916) or contain "a straightforward admission of fault" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610), as required for mandatory relief under section 473, subdivision (b). Sharon stated only, "To the extent I was wrong about the service issues, it was certainly my fault and not the fault of Isaac." This confession was equivocal and limited to her erroneous advice that a complaint naming her as a defendant had to be served personally.[7] Sharon did not admit error or fault for telling Isaac "not [to] worry about the papers," which is the advice that caused Isaac not to respond and led to the entry of his default.

> 3.  Isaac Was Not Entitled to Relief Under the Discretionary Provision
>     of Section 473, Subdivision (b)

The discretionary relief provision of section 473, subdivision (b), provides that "a court 'may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.'" (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1200.) "'A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.' [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258.) "In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances" might have made the same error.'" [Citation.] In other words, the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.' [Citation.]" (*Ibid*.; see *Ambrose v.*

---

**7**    Which is indeed erroneous, because there are other ways a plaintiff may, in appropriate circumstances, be able to serve a defendant with a summons and complaint: by substituted service, mailing with acknowledgement of receipt, and publication. (See §§ 415.10, 415.20, 415.30, 415.50.)

*Michelin North America, Inc.* (2005) 134 Cal.App.4th 1350, 1354 ["'[e]xcusable neglect' is generally defined as an error '"a reasonably prudent *person* under the same or similar circumstances might have made"'"]; *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1401 ["'[i]In deciding whether counsel's error is excusable, the reviewing court looks to the nature of the mistake or neglect and whether counsel was otherwise diligent in investigating and pursuing the claim'"].)

Here, substantial evidence supports the trial court's finding that any neglect by Sharon was not excusable. (See *In re Marriage of Eben-King & King*, *supra*, 80 Cal.App.4th at pp. 118-119 [when the trial court decides a motion to vacate pursuant to section 473 based on conflicting declarations, the reviewing court will uphold all express and implied findings if supported by substantial evidence].) A reasonably prudent person at least would have read the document, advised her client to read the document, or asked someone else to read the document. Neither Isaac nor Sharon made any effort to investigate or find out what the case was about, what kind of case it was (Isaac thought without reading the complaint that it might have been a probate or unlawful detainer case), who the parties were, or where the case was filed. Isaac stated he simply "may have mislaid or discarded the papers," and Sharon never made any attempt to read them. Reasonably prudent people, especially those with advanced degrees in business and law, do not engage in such conduct, especially when they have knowledge that their adversary, according to Sharon, is litigious and "has a history of making frivolous claims and misrepresenting facts in . . . legal matters." The trial court did not abuse its discretion in denying Isaac's motion for discretionary relief under section 473, subdivision (b).

C.    *The Trial Court Abused Its Discretion in Denying Sharon's Motion To Vacate*

Sharon contends that she is entitled to relief (1) pursuant to section 473, subdivision (d), because she was not properly served; (2) pursuant to section 473.5

because she did not have actual notice to defend the action in time to defend herself;[8] and (3) pursuant to the court's equitable power on the ground of extrinsic fraud or mistake. Sharon does not argue she is entitled to relief pursuant to section 473, subdivision (b). We agree with her first contention that she was not properly served by substitute service, and that therefore she is entitled to relief under section 473, subdivision (d).

Section 473, subdivision (d), provides for relief from a void judgment. "'[A] default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.' [Citation.]" (*Sakaguchi v. Sakaguchi*, *supra*, 173 Cal.App.4th at p. 858; see *Ellard v. Conway*, *supra*, 94 Cal.App.4th at p. 544 ["[u]nder section 473, subdivision (d), the court may set aside a default judgment which is valid on its face, but void, as a matter of law, due to improper service"].) Here, the default judgment against Sharon is void because she was not properly served.

A proof of service that complies with the statutory requirements creates a rebuttable presumption of proper service. (*Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 795; accord, *Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1205.) The declaration of the process server, however, rebuts that presumption in this case. The proof of service for Sharon states that on September 11, 2012, at 8:10 p.m., the process server served Sharon by substituted service by delivering a copy of the summons and first amended complaint to "Isaac Richard III, Son," at the Piedmont address, and then mailed a copy of the documents to Sharon. The proof of service for Tre states that the process server personally served "Isaac Richard III" at the same time and place.

---

**8**    Sharon's motion pursuant to section 473.5 was timely. A motion to vacate entry of default and a default judgment pursuant to section 473.5 is timely if it is filed within two years after entry of the default judgment or 180 days after service of written notice that the default or default judgment has been entered. (See *Ellard v. Conway*, *supra*, 94 Cal.App.4th at p. 548.) Although Sharon and Tre did not specifically cite section 473.5 in their motion to vacate, they did argue that the court should vacate the defaults because they did not have actual knowledge of the case. Andrea does not argue that Sharon and Tre waived their right to raise section 473.5 on appeal because they did not cite the statute in the trial court.

The process server's declaration submitted in opposition to the motion to vacate, however, describes delivery of the summons and first amended complaint to someone who is obviously, and admittedly, not Tre. The process server described the individual he served as 5 feet 11 inches tall, 200 pounds, and 45 years old. Tre is 20 years old, and it is undisputed that Tre was in class at college on September 11, 2012, at 8:10 p.m. Andrea has no explanation for this inaccuracy. Although Andrea suggests that the process server may have served Isaac instead of Tre, there is no evidence that this is what occurred, or even whether Isaac looks like the individual the process server described. These inconsistencies and contradictions cast considerable doubt on the propriety of the substitute service on Sharon. Because we scrutinize an order denying a motion to vacate under section 473 more carefully than an order granting a motion to vacate (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981), we conclude that Sharon is entitled to relief under section 473, subdivision (d). (See *Maynard v. Brandon* (2005) 36 Cal.4th 364, 372 ["'[b]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default'"].)[9]

D. *The Trial Court Abused Its Discretion In Denying Tre's Motion To Vacate*

Tre contends he is entitled to relief (1) pursuant to section 473.5, subdivision (a), because any service of summons did not result in actual notice to defend the action, and (2) pursuant to the court's equitable power on the ground of extrinsic fraud or mistake.[10] We agree with Tre's first contention that he did not have actual notice of the action in time to defend himself, and that therefore he is entitled to relief pursuant to section 473.5, subdivision (a).

---

[9] Because we conclude that Sharon is entitled to relief under section 473, subdivision (d), we do not reach her arguments that she is entitled to relief under section 473.5 or to equitable relief.

[10] Tre does not argue on appeal that he is entitled to relief pursuant to section 473, subdivision (b), or section 473, subdivision (d).

There is no evidence (other than a proof of service that describes delivery to someone else) that would support a reasonable inference that Tre had actual notice of the action against him. Tre stated he was in class when the process server served the complaint. Tre's statement, supported by a third party witness, is uncontroverted. Moreover, we do not know who the process server served at the family residence, but we do know it was not Tre, and we know the process server did not mail a copy of the summons and first amended complaint to Tre. Although Sharon and Isaac have been engaged in litigation with Andrea previously and frequently, Tre is a college student who had only seen Andrea twice in the last nine years, and there is no evidence he had any knowledge of or involvement in his family's litigation. In light of the evidence that Sharon and Isaac chose not to read the documents with which they were served, Isaac's belief that the papers did not involve him (or Tre) and that he misplaced or disposed of them, and Sharon's failure to make any efforts to learn what the lawsuit was about, Tre had no way of knowing that he was a party to this lawsuit. There is evidence Isaac told

Sharon over the phone that she was a party to an action brought by Andrea, but there is no evidence that Isaac told Tre he was a party to the action.

Therefore, we conclude that in Tre's case the policy in favor of hearing disputes on the merits outweighs countervailing considerations. Tre was not involved in his parents' decision to ignore the existence of Andrea's lawsuit against them and the consequences of failing to respond. It would be unfair to punish Tre for his parents' reckless decision to disregard the service of a summons and complaint. (See *In re Estate of Baldwin* (1912) 162 Cal. 471, 475 [it is an "unjust rule which would visit the sins of the parents upon the innocent children"].) The trial court abused its discretion in denying Tre's motion to vacate the default judgment pursuant to section 473.5.

## DISPOSITION

The trial court's order denying the motion by Sharon Wooden and Isaac Richards III to vacate the defaults and default judgment against them is reversed. The trial court is directed to vacate the defaults and default judgment against Sharon Wooden and Isaac Richards III, and to allow them to file their proposed answer and cross-complaint. The trial court's order denying the motion by Isaac Richards to vacate the default and default judgment against him is affirmed. The parties are to bear their own costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

ZELON, J.