Filed 8/3/22  Towns End Development v. Valdez CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TOWNS END DEVELOPMENT, INC., | B317492 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV27223) |
| v. | |
| VIRGINIA F. VALDEZ, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Malcom H. Mackey, Judge.  Affirmed.

Chiao & Wu, Ching K. Chiao and Alexei Brenot for Plaintiff and Appellant.

Law Offices of Edgardo M. Lopez and Edgardo M. Lopez for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff and appellant Towns End Development, Inc. (Towns End) appeals from the order quashing service of the summons and complaint on defendant and respondent Virginia F. Valdez, vacating the default and setting aside the default judgment entered against Valdez, and dismissing without prejudice the complaint Towns End filed against her. We affirm the trial court's order.

## FACTUAL BACKGROUND

Towns End is a California corporation with its principal place of business in Irvine, California. Valdez is a 98-year-old widow who lives in her home at 8614 Laurel Canyon Boulevard in Sun Valley California. In addition to her home, Valdez owns a multiunit residential apartment building located at 3870 Clinton Avenue in Los Angeles, California (the Clinton property).

Valdez listed the Clinton property for sale in November 2018. On November 9, 2018, Towns End submitted a written offer to purchase the Clinton Property for $875,000. The offer was submitted on a California Association of Realtors residential income property purchase agreement and joint escrow instructions agreement (the Purchase Agreement) that contains both mediation and arbitration provisions. The mediation provision requires the parties to mediate any dispute arising out of the agreement or transaction before resorting to arbitration or court action.[1] The arbitration provision states that any dispute

---

[1] The mediation provision states in relevant part: "The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R.

not settled through mediation must "be decided by neutral, binding arbitration."[2] (Boldface omitted.) The Purchase Agreement states that the filing of an action to preserve a statute of limitations or to enable the recording of a notice of pending action shall not constitute a waiver or violation of the mediation and arbitration provisions.

Valdez signed the Purchase Agreement on November 13, 2018. Escrow was opened that same day, with a scheduled closing date of November 30, 2018. Valdez cancelled the sale and escrow on or after November 30, 2018.

---

Consumer Mediation Center . . . or through any other mediation provider or service mutually agreed to by the Parties."

[2] The arbitration provision states in part: "The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. . . . [¶] 'NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. . . . IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.'" (Boldface omitted.) Both parties initialed the arbitration provision.

## PROCEDURAL HISTORY

Towns End attempted to initiate mediation with Valdez by sending a request for mediation to the C.A.R. Mediation Center on January 8, 2019. On January 30, 2019, C.A.R. Mediation Center notified Towns End that notice of the request to mediate had been sent to Valdez on January 9, 2019, requesting a response on or before January 18, 2019, but Valdez had not responded.

On August 2, 2019, Towns End filed a complaint against Valdez for breach of contract and specific performance. Towns End also filed and recorded a lis pendens against the Clinton property and served a copy of the lis pendens on Valdez by mail at her residence address.

**Attempted personal service of summons and complaint and service by publication**

In a case management statement filed on November 20, 2019, Towns End reported that it had made multiple unsuccessful attempts to serve Valdez with the summons and complaint and that service by publication might be necessary. At a January 27, 2020 hearing, the trial court took the matter off calendar and advised Towns End's counsel to file an application for leave to serve Valdez by publication.

In February 2020, Towns End filed an application for leave to serve Valdez by publication.[3] The application was supported by the declaration of Towns End's attorney, Alexei Brenot, among other documents. Brenot stated in his declaration that his law firm had confirmed Valdez's residence address as 8614 Laurel

---

[3] Towns End filed a previous application for publication in January 2020 that was rejected by the court.

4

Canyon Boulevard in Sun Valley; that a process server made several unsuccessful attempts to personally serve Valdez with the summons and complaint at her residence; that a copy of the summons and complaint and notices of acknowledgment were sent to Valdez by first class mail to her residence address, but the notices of acknowledgment were never returned. Brenot further stated that his firm had conducted Internet searches for Valdez and submitted an information request to the U.S. Post Office but had been unable to locate Valdez.

Attached as an exhibit to Brenot's declaration was a declaration of reasonable diligence by Erick Martin Salas stating that he attempted to effect personal service on Valdez at her residence address on December 12, 13, 14, and 15, 2019. Salas's notation for the December 15, 2019 attempted service states: "There is no answer at residence address. Neighbor from 8266, Victor—Hispanic, 50's, said subject was an old lady who was taken to the hospital by an ambulance over 1 year ago and has not been seen since then. There are different people that come to the property every once in a while."[4]

---

[4] Salas executed an earlier declaration of reasonable diligence that Towns End had attached to its previous application for service by publication rejected by the court in January 2020. Salas's previous declaration states that he attempted to effect personal service on Valdez at her residence on August 6, 7, 8, and 9, 2019. Salas's notation regarding the August 9, 2019 attempted service states: "There is no answer at residence address. Property looks abandoned or unoccupied. Front white gate was locked up. No noise at all. Neighbor from 9622, Francisco, who is a Hispanic, Male, 46 years old, said there used to be a lady living by herself that hardly had any visitors. He used to see the care

On February 24, 2020,[5] the trial court issued an order directing Towns End to serve Valdez by publication in the San Fernando Sun.  On July 24, 2020, Towns End filed a proof of publication stating that service of the summons and complaint had been completed by publication in the San Fernando Sun on March 12, 19, 26, and April 2, 2020.

**Entry of default, default judgment, and sale of the property**

Towns End submitted a request for entry of default on September 14, 2020, and the superior court clerk entered default against Valdez that same day.  On December 7, 2020, Towns End submitted a request for entry of default judgment.  On February 8, 2021, the trial court entered default judgment against Valdez and in favor of Towns End.  Towns End served a notice of entry of default judgment on Valdez by mail at her residence address.

After entry of the default judgment, Towns End attempted, unsuccessfully, to contact Valdez to have her sign and return documents necessary to effect the sale of the Clinton property.  On July 26, 2021, Towns End filed an ex parte application for an order directing the court clerk to execute documents on Valdez's behalf to allow the Clinton property to be sold.  The trial court granted the application and entered the requested order on July 28, 2021.

---

giver.  He has not seen anyone for a long time, he is not sure if she is hospitalized or passed away."

[5]     Although the order for publication was issued on February 24, 2020, it is file stamped and listed on the superior court's registry of actions as February 18, 2020.

6

Pursuant to the trial court's order, the clerk of the court executed the documents necessary to complete Towns End's purchase of the Clinton property.  On August 31, 2021, Towns End completed the purchase and recorded a grant deed transferring ownership of the Clinton property from Valdez to itself.

**Motion to quash service and set aside default judgment**

On October 7, 2021, Valdez filed a motion to quash service of the summons and to set aside the default and default judgment under Code of Civil Procedure sections 418.10 and 473, subdivision (d).[6]  Valdez argued that the service by publication was void because the affidavits filed in support of the service were deficient.  Valdez further argued that Towns End had failed to comply with the mandatory mediation and arbitration provisions of the Purchase Agreement before filing its lawsuit.  Valdez's motion was supported by her own declaration, the declaration of her attorney, and the declarations of several of her family members.

In her declaration, Valdez states that she is a 98-year-old widow; she has lived in her Sun Valley residence for the past 40 years; her mobility is limited, and she uses a walker; she relies on caregivers for assistance 24 hours a day, seven days a week; and she never leaves her home except to attend doctor appointments.  Valdez further states that she never received documents concerning Towns End's lawsuit and had never been informed by anyone about the lawsuit; and had she known she was being sued, she would have hired an attorney to defend her.

---

[6]     All further statutory references are to the Code of Civil Procedure.

7

Valdez's niece, Sheena Valdez Foster, submitted a declaration stating that in July 2021, she went to the Clinton property at Valdez's request to deliver a letter to a tenant about past due rent. The tenant telephoned Valdez's residence the following day, and Foster answered the call. The tenant told Foster to check Valdez's mailbox because the tenant had sent Valdez a letter, along with a FedEx envelope addressed to Valdez that had been delivered to the tenant's apartment at the Clinton property. Foster opened the envelope and found documents indicating the Clinton property had been sold. Valdez asked Foster to contact Valdez's brother, Corsino Floresca.

Floresca states in his declaration that Valdez is in poor health and needs full-time caregiver assistance. Floresca further states that visitors to Valdez's home, including her caregivers, park their cars behind the house in a driveway that can be accessed through an alley that runs parallel to Laurel Canyon Boulevard. Visitors enter the home through the kitchen door at the back of the home. In his declaration, Floresca also discusses his efforts to find an attorney to represent Valdez in this action.

Valdez's attorney, Edgardo M. Lopez, states in his declaration that he conducted a visual inspection of Valdez's home. He parked in the home's driveway, which he accessed through an alley at the rear of the property. Lopez took photographs of the driveway, where his car and three other vehicles were parked. Lopez also photographed the front of the home. In addition to the photographs, Lopez attached to his declaration images of Valdez's home that he obtained from Google Maps, including an aerial view that showed the alley and driveway at the rear of the property. Lopez opines in his declaration that had Towns End's process server exercised

reasonable due diligence, the process server would have located the alley behind Valdez's residence and been capable of personally serving Valdez with the summons and complaint.

Towns End opposed Valdez's motion, arguing that the motion was untimely under section 473.5 and was substantively defective because Valdez offered no defense to the underlying action and provided no proposed response to the complaint. Towns End further argued that service by publication was proper.

After hearing argument from the parties at a November 2, 2021 hearing on the motion, the trial court granted Valdez's motion, quashed service of the summons and complaint, vacated the default entered against Valdez on September 15, 2020, and set aside the default judgment entered against her on February 2, 2021. The trial court found that Towns End knew the location of Valdez's residence, that its service efforts had been inadequate, and that Towns End had not established that it could not with reasonable diligence have served Valdez in an authorized manner other than by publication.

The trial court also found that the case could be dismissed on the ground that the issues were subject to the parties' arbitration agreement and Towns End had not exhausted the arbitration remedy. The court ordered Towns End's complaint dismissed without prejudice. This appeal followed.

## DISCUSSION

I.    **Applicable law and standard of review**

A.    *Service by publication*

"'[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.]

[A] default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.'" (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544 (*Ellard*).) Whether a judgment is void for lack of proper service is a question of law that an appellate court reviews de novo. (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961-962.)

A summons may be served by various methods. If service of a summons by other means is impossible, service may be effected by publication, upon the trial court's approval. (*Watts v. Crawford* (1995) 10 Cal.4th 743, 748-749.) Section 415.50 governs service by publication. Subdivision (a) of that statute provides in pertinent part: "A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner . . . ." (§ 415.50, subd. (a).) "If a defendant's address is ascertainable, a method of service superior to publication must be employed, because constitutional principles of due process of law, as well as the authorizing statute, require that service by publication be utilized only as a last resort. . . . 'Before allowing a plaintiff to resort to service by publication, the courts necessarily require him to show exhaustive attempts to locate the defendant, for it is generally recognized that service by publication rarely results in actual notice.'" (*Watts*, at p. 749, fn. 5, citations omitted.)

Whether a plaintiff exercised the diligence necessary to justify service by publication depends on the facts of the case. (*Donel, Inc. v. Badalian* (1978) 87 Cal.App.3d 327, 332.) We review a trial court's finding whether a defendant could or could not with reasonable diligence be served by a means superior to

10

publication for substantial evidence.  (See *Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241, 248.)

When an order directing service by publication is improperly made, a court may quash the service of summons effected pursuant to such an order.  (*Mix v. Yoakum* (1934) 138 Cal.App. 290, 293.)  A trial court has the inherent ability to reconsider a prior order directing service of summons by publication so it may correct its own errors.  (*Humphrey v. Bewley* (2021) 69 Cal.App.5th 571, 579.)

**B.**     ***Vacating default judgment based on improper service or lack of notice***

Section 473.5 allows a defendant to seek relief from entry of a default or default judgment if service of the summons "has not resulted in actual notice to a party in time to defend the action," so long as the failure of actual notice was not due to the defendant's "avoidance of service or inexcusable neglect." (§ 473.5, subs. (a), (c).)[7]  "'"[A]ctual notice" in section 473.5 "means genuine knowledge of the party litigant. . . ." [Citation.]' [Citation.]  '"[A]ctual knowledge" has been strictly construed, with the aim of implementing the policy of liberally granting relief so that cases may be resolved on their merits.  [Citation.]' [Citation.]  We review the court's findings regarding the actual notice of the action for an abuse of discretion."  (*Ellard, supra*, 94 Cal.App.4th at p. 547.)

---

[7]     Section 473.5, subdivision (a) provides in part:  "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."

11

Section 473, subdivision (d) similarly allows a defendant to move to set aside a judgment that is void due to lack of proper service. A "'default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.'" (*Ellard, supra*, 94 Cal.App.4th at p. 544.) Whether a judgment or order is void due to lack of proper service is a question of law that we review de novo. (*Calvert v. Al Binali, supra*, 29 Cal.App.5th at pp. 961-962.) We review a trial court's decision whether to set aside a void judgment or order under the facts and circumstances before it for abuse of discretion. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*).) A trial court's decision in this regard is not an abuse of discretion unless it exceeded the bounds of reason in light of the circumstances. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

## II.    Timeliness of Valdez's motion

A motion for relief from a default judgment under section 473.5 must "be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or default judgment has been entered." (§ 473.5, subd. (a).) A party moving for relief under section 473.5 based on lack of actual notice must do so within two years after entry of judgment and must act with diligence upon learning of the judgment. (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180 (*Trackman*).)

A two-year time limit also applies to a party moving under section 473, subdivision (d) to set aside a judgment that is valid on its face but void for lack of proper service. (*Trackman, supra*, 187 Cal.App.4th at p. 180 [two-year statutory period for relief

12

from default judgment in § 473.5 applies to § 473, subd. (d) motion to set aside judgment void for lack of proper service]; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 (*Dill*) [motion to vacate a void judgment is timely if made within two years of entry of judgment].)

We reject Towns End's argument that the 180-day time limit in section 473.5, subdivision (a)(ii) applies, and that Valdez's motion to set aside the default judgment was untimely. Towns End maintains that it served Valdez with notice of entry of the default judgment by mail on February 8, 2021; that Valdez had 180 days thereafter, or until August 12, 2021, to move to set aside the default judgment; and that her motion for relief from the default judgment, filed on October 7, 2021, was untimely.

There is evidence in the record, however, that Valdez never received notice that she had been sued or that a default judgment had been entered against her. That evidence supports Valdez's position that the default judgment was void under section 473, subdivision (d) for lack of personal jurisdiction. (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1330-1331 [lack of jurisdiction shown by extrinsic evidence nullifies a judgment that appears valid on its face].) Under these circumstances, the two-year statutory time period for relief from the default judgment applies. (*Trackman, supra*, 187 Cal.App.4th at p. 181; *Dill, supra*, 24 Cal.App.4th at p. 1444.) Valdez's motion to set aside the default judgment, filed eight months after entry of the judgment, was timely.

## III. Validity of service by publication

Substantial evidence supports the trial court's determination that Towns End failed to establish that it could not with reasonable diligence have served Valdez by a means

superior to publication. Towns End knew the address and location of Valdez's home. There was evidence that Valdez's home can be accessed through an alleyway in the rear of the property where the home's driveway and kitchen door are located. Vehicles parked on the home's driveway are plainly visible in photographs taken from the rear alleyway. Valdez stated in her declaration that she and her caregivers are present in the home except when she has a doctor's appointment. Towns End's process server stated in his declaration that "[t]here are different people that come to the property every once in a while."

That the trial court previously issued an order authorizing service by publication did not preclude the court from subsequently quashing service of the summons effected pursuant to that order. (*Mix v. Yoakum, supra*, 138 Cal.App. at p. 293.) The trial court had the inherent authority to reconsider its prior order directing service by publication. (*Humphrey v. Bewley, supra*, 69 Cal.App.5th at p. 579.) The trial court did not err by quashing service of the summons.

## IV. No abuse of discretion in vacating default judgment

Because there was substantial evidence that Valdez had no actual notice of Towns End's lawsuit, and that Towns End failed to establish that it could not, with reasonable diligence, have served Valdez by a means superior to publication, the trial court did not abuse its discretion by setting aside the default judgment entered against Valdez. (*Pittman, supra*, 20 Cal.App.5th at p. 1020.)

## V. Failure to provide a draft response to the complaint

We reject Towns End's contention that Valdez's motion to vacate the default judgment should have been denied because she failed to offer a defense to the action and failed to provide a draft

14

proposed response to the complaint.  In her motion, Valdez disputed that she had accepted Towns End's offer to purchase the Clinton property and that a valid contract had been formed. Valdez also argued that the parties' dispute was governed by the mediation and arbitration provisions of the Purchase Agreement. Towns End does not challenge the trial court's determination that the mediation and arbitration provisions apply or the court's dismissal of Towns End's complaint on that basis.

## DISPOSITION

The order quashing service of the summons and complaint on Valdez, vacating and setting aside the default and the default judgment entered against Valdez, and dismissing without prejudice the complaint filed by Towns End is affirmed.  Valdez shall recover her costs on appeal.

_____

CHAVEZ, J.

We concur:


_____

ASHMANN-GERST, Acting P. J.


_____

HOFFSTADT, J.

15