[No. G024339. Fourth Dist., Div. Three. Dec. 12, 2001.]

HENRY A. ELLARD et al., Plaintiffs and Respondents, v. LARRY CONWAY et al., Defendants and Appellants.

COUNSEL

Garrison & McInnis and Robert R. Massey for Defendants and Appellants.

Stanley R. Jones for Plaintiffs and Respondents.

OPINION

**O'LEARY, J.**—Larry and Marilyn Conway (collectively the Conways unless the context indicates otherwise) and United Business Ventures, Inc. (United),[1] appeal from an order denying their motion to vacate a default

---

[1] On June 15, 2001, we granted appellants' counsel's request to withdraw as attorneys of record. The Conways were substituted into the appeal in propria persona. United Business Ventures, Inc., was advised to retain counsel within 30 days (*Channel Lumber Co. v. Porter Simon* (2000) 78 Cal.App.4th 1222, 1228 [93 Cal.Rptr.2d 482] [corporation cannot represent

judgment entered against them in favor of Henry A. and Lillian Ellard (the Ellards). The Conways argue the default judgment was void because they were not properly served, and the trial court abused its discretion when it denied their motion because they did not receive actual notice of the lawsuit. We affirm.

## I

The Ellards executed and delivered deeds of trust to the Conways on three residential properties to secure various promissory notes. United was the escrow company for two of the properties. In July 1997, the Ellards sued the Conways for fraud and asked the trial court to void the deeds of trust and notes. In October 1997, the process server attempted to serve the Conways at 1088 South Taylor Court, Anaheim Hills. The gate guard admitted the process server, but there was no answer at the door. The process server noticed there was mail addressed to "Richter." The guard told the process server the Conways had moved, and the current residents were the Richters. The Ellards' counsel contacted the United States Postal Service and obtained the Conways' forwarding address, the "Postal Annex," 751 Weir Canyon, No. 157-114, Anaheim Hills.

On November 12, 1997, the process server went to the Postal Annex to serve Larry Conway, individually and as United's agent, and Marilyn Conway individually. The process server spoke with the Postal Annex manager who told him the Conways received mail there. The process server left the summons and complaint with the manager. The same day, the process server mailed a copy of the summons and complaint to the Conways at the Postal Annex. Later, the Ellards' counsel also mailed a copy of the summons and complaint to the Conways at the Postal Annex.

On December 1, 1997, Larry Conway called the Ellards' counsel. Evidence regarding the discussion is conflicting. Larry denied receiving a copy of the summons and complaint and claimed he told the Ellards' counsel that legal documents should not be served at the Postal Annex because it was not his residence or business address. Larry claimed he gave the Ellards' counsel his address and telephone and facsimile number in Tennessee and asked the attorney to fax him all documents regarding the lawsuit.

The Ellards' counsel claimed Larry told him he received a copy of the summons and complaint and wanted to discuss the case. He denied Larry told him the Postal Annex was not a proper address for service of legal documents. The attorney denied Larry asked him to send him a copy of the

itself]), or the appeal as to it would be dismissed. The corporation did not retain counsel to make a general appearance and therefore we dismissed its appeal on November 29, 2001.

summons and complaint, and he claimed Larry refused to reveal his telephone number or address in Tennessee.

The next day, Larry faxed the Ellards' counsel a signed waiver proposing to toll the time limit for "responding and or answering any and all complaints known as case #781482 . . . ." He called the attorney again to discuss a settlement. The attorney told Larry that if he did not receive an answer, he would seek a default.

When the answer did not arrive, the Ellards moved for a default and mailed a copy of the request to the Conways' post office box. On January 22, 1998, the clerk entered the default. On April 22, the court entered default judgment against the Conways, and the Ellards' counsel mailed a copy of the judgment to the Postal Annex.

In July 1998, the Conways moved to vacate the default judgment based on Code of Civil Procedure section 473.5[2] because they were not properly served, and they did not have "actual notice" of the litigation. The court denied their motion.

## II

■ The Conways argue the default judgment was void because they were not properly served. We disagree.

■ "[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void. [Citation.]" (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 [29 Cal.Rptr.2d 746].) Under section 473, subdivision (d), the court may set aside a default judgment which is valid on its face, but void, as a matter of law, due to improper service. (*Brown v. Williams* (2000) 78 Cal.App.4th 182, 186-187, fn. 4 [92 Cal.Rptr.2d 634]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 5:485, pp. 5-113 to 5-114.)

■ Section 415.20, subdivisions (a) and (b) authorize substitute service of process in lieu of personal delivery. ■ Statutes governing substitute service shall be "liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant . . . . [Citation.]" (*Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1392 [8 Cal.Rptr.2d 351] (*Bein*).)

---

[2]All further statutory references are to the Code of Civil Procedure.

██ Substitute service on the Conways was proper. Section 415.20, subdivision (b) governs substitute service on individuals. It provides, "If a copy of the summons and of the complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and of the complaint at such person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint . . . to the person to be served at the place where a copy of the summons and of the complaint were left."

The Conways argue substitute service was improper because the Ellards were not reasonably diligent in attempting personal service, section 415.20 does not authorize substitute service on a private/commercial post office box, and the Postal Annex manager was not a person "apparently in charge" of their post office box. We disagree.

The Conways correctly argue that " ' "[o]rdinarily . . . two or three attempts at personal service at a *proper* place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." [Citation.]' " (*Bein, supra,* 6 Cal.App.4th at pp. 1391-1392, italics added.) However, this authority is inapt. Here, the process server attempted to serve the Conways at 1088 South Taylor Court, Anaheim Hills. The process server noticed there was mail addressed to "Richter," and the guard told him the Conways had moved. Thus, the South Taylor Court residence was not the *proper* place to serve the Conways because they moved. It would be futile for the process server to return to that address two more times and attempt service at a residence where the Conways no longer lived. Moreover, the Ellards' counsel called the United States Postal Service and obtained the Conways' forwarding address. Contrary to the Conways' assertion, the Ellards' process server was not required to "exhaust all avenues of obtaining a current address." Contacting the United States Postal Service was sufficient. Therefore, the process server was reasonably diligent in attempting personal service on the Conways.

Although there are no California cases addressing whether substitute service at a private/commercial post office box is proper, one federal court concluded it is. In *Burrows v. City of League City, Texas* (S.D.Tex. 1997) 985 F.Supp. 704, 706, the court explained that the "clear and unequivocal

language" of section 415.20, subdivision (b) mandates "service at a person's usual mailing address *other than* a United States Postal Service post office box is effective." (Original italics.) The court reasoned, "Had the legislature intended that service be effective only at mailing addresses other than *any* post office box, it would have omitted the descriptive language 'United States Postal Service' preceding 'post office box.' " (*Burrows*, at p. 706, original italics.) We find this reasoning persuasive. The plain language of section 415.20, subdivision (b) authorizes substitute service at a defendant's usual mailing address, which includes a private/commercial post office box. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 4:87.3, p. 4-30.)

The Conways' reliance on *Bonita Packing Co. v. O'Sullivan* (C.D.Cal. 1995) 165 F.R.D. 610 is misplaced. Although the *Bonita* court held substitute service at a private post office box was improper, it did so because there was an alternative means of service. (*Id.* at pp. 613-614.) The court stated, " '[A] statutory method has occasionally been held insufficient where a better method could just as well have been prescribed.' [Citation.]" (*Id.* at p. 614.) The court concluded, even if section 415.20, subdivision (b) authorizes substitute service at a private post office box, service was improper because plaintiffs could have served defendant's attorney pursuant to federal law. (*Bonita Packing Co.*, at p. 614.)

In contrast, the Conways leased the private/commercial post office box and notified the United States Postal Service it was their forwarding address, making it their "usual mailing address." No facts suggest personal or substitute service was available at any other address or on any other individual. Thus, section 415.20, subdivision (b) authorized substitute service on the Conways at the private post office box.

The Conways contend the Postal Annex manager was not "apparently in charge" of their post office box and she was not "closely connected"[3] to them. Indeed, "Service must be made upon a person whose 'relationship with the person to be served makes it more likely than not that they will deliver process to the named party.' [Citation.]" (*Bein, supra,* 6 Cal.App.4th at p. 1393.) But that is what happened.

---

[3]The Conways cite section 415.20's Judicial Council comment to support their argument that there must be a close connection between the person served and the defendant. True, section 415.20's comment states there must be a close connection. (Judicial Council com., reprinted at 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 415.20, p. 554.) However, section 415.20, subdivision (b)'s Judicial Council comment states the summons and complaint "must be left in the presence of a . . . person apparently in charge of [the] business." (Judicial Council com., reprinted at 14 West's Ann. Code Civ. Proc., *supra*, foll. § 415.20, p. 555.) The Postal Annex manager was such a person.

The Postal Annex manager knew the Conways and told the process server they received mail there. The process server left a copy of the summons and complaint with the manager and described the contents of the documents. It was the Postal Annex manager's duty to deliver mail to the Conways as lessees of the post office box. Under these circumstances, it was more likely than not the manager would deliver the summons and complaint as well.

Finally, we note the process server mailed copies of the summons and complaint to the Conways at their Postal Annex address. (§ 415.20, subd. (b).) Thus, we find individual service on Larry and Marilyn Conway at their usual mailing address, their private/commercial post office box, was proper.

## III

The Conways contend the trial court abused its discretion when it denied their motion to vacate the default judgment because they did not have actual notice of the lawsuit in time to defend. We disagree.

Section 473.5, subdivision (a) provides, "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or a default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action." Section 473.5, subdivision (c) allows the court to set aside the default judgment if it finds the defendant's lack of actual notice in time to defend was not caused by the defendant's avoidance of service or inexcusable neglect.

" '[A]ctual notice' in section 473.5 'means genuine knowledge of the party litigant . . . .' [Citation.]" (*Tunis v. Barrow* (1986) 184 Cal.App.3d 1069, 1077 [229 Cal.Rptr. 389].) " '[A]ctual knowledge' has been strictly construed, with the aim of implementing the policy of liberally granting relief so that cases may be resolved on their merits. [Citation.]" (*Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 39-40 [283 Cal.Rptr. 271].) We review the court's findings regarding actual notice of the action for an abuse of discretion. (*Olvera v. Olvera, supra,* 232 Cal.App.3d at p. 41.)

The Conways cite *Olvera v. Olvera, supra,* 232 Cal.App.3d at page 40, for the proposition notice of the litigation from a source other than service of the summons and complaint is not actual notice for purposes of section 473.5. In *Olvera,* the plaintiffs sued the defendant for breach of contract and fraud, seeking punitive damages and specific performance of a promise to execute a trust deed. The plaintiffs served the defendant by publication and, after the defendant failed to answer, obtained a default judgment. (*Olvera,* at p. 36.) The defendant received a notice of lis pendens,

but she did not know the plaintiffs alleged a cause of action for fraud and sought punitive damages. (*Id.* at p. 41.) The Court of Appeal held, "[I]f the court has acquired jurisdiction, i.e., summons has been served, but service of summons has not resulted in actual notice to a defendant, although the defendant has acquired actual knowledge of the action from another source, this does not preclude a defendant from seeking relief under section 473.5." (*Id.* at p. 40.)

We decline to adopt the Conways' broad reading of *Olvera*. *Olvera* held actual knowledge from a source other than service of summons does not *preclude* a defendant from seeking relief under section 473.5. It did not hold such knowledge requires the trial court to grant relief under all circumstances.

The trial court could reasonably conclude the Conways had actual notice in time to defend. They were served on November 12, 1997. The Ellards' counsel stated Larry admitted he knew about the lawsuit by December 1, 1997, because he called that day to discuss the lawsuit. The next day he faxed a document to the attorney proposing to waive/toll the deadline to answer the complaint, which referenced the case number. Larry then called the Ellards' counsel offering to settle the case. He would not have been willing to settle the case if he were unaware of the Ellards' claims against them. Larry had the Ellards' counsel's telephone number and the case number, and he wanted to settle the case. It was reasonable for the court to find the Conways had actual notice of the Ellards' action.

It was also reasonable for the court to find the Conways had time to defend the action. They had actual knowledge of the lawsuit two weeks before an answer was due. After the Ellards' counsel warned Larry a default would be taken if they did not answer, Larry threatened to sue the Ellards for deprivation of civil rights. Not only did the Conways have actual notice of the action in time to defend, but their failure to answer was a result of inexcusable neglect. (§ 473.5, subd. (c).) The Conways knew their answer was due and chose not to respond.

The order is affirmed. The Ellards shall recover their costs on appeal.

Sills, P. J., and Moore, J., concurred.