Filed 6/17/25  Ortiz v. Vazquez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| APRIL E. ORTIZ, | D084101 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00034610-CU-PA-NC) |
| ALFREDO ALVAREZ VAZQUEZ, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Carlton & Alberola, Andrew C. Carlton and Edward Alberola, for Plaintiff and Appellant.

Horvitz & Levy, John F. Querio and Jeffrey Vides; Gates, Gonter, Guy, Proudfoot & Muench, Douglas D. Guy and Jasmine H. Ng for Defendants and Respondents.


Plaintiff April E. Ortiz appeals from an order granting the motion to set aside the entry of default and the default judgment obtained by defendants

Alfredo Alvarez Vazquez and Maria Velasco Mendez (Defendants) in Ortiz's personal injury lawsuit arising from a motor vehicle accident.

Ortiz contends that the trial court abused its discretion in granting relief pursuant to Code of Civil Procedure[1] section 473.5 because, according to Ortiz, Defendants, who were served with the summons by publication, had actual notice in time to defend the action.

We conclude that the trial court was within its discretion to grant relief to Defendants, and we accordingly affirm the order setting aside the entry of default and the default judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A motor vehicle accident occurred on August 15, 2019, during which, according to Ortiz, Vazquez's vehicle, driven by Mendez, rear-ended Ortiz's vehicle on the freeway in stopped traffic. Ortiz alleges that as a result of the accident, she incurred chronic lower back pain, upper back pain, neck and shoulder pain and headaches.

Vazquez and Mendez were insured by the Automobile Club of Southern California (ACSC). The dealings between the claims representatives for ACSC and Ortiz's attorney, Edward Alberola, are especially relevant to the issues raised in this appeal. We will accordingly set forth a detailed description of those dealings, along with the other relevant procedural history.

At some point after the accident, Ortiz filed a claim with ACSC, acting on her own behalf. Later, on October 19, 2020, her attorney, Alberola, became involved and contacted ACSC about the claim.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

On July 29, 2021, Alberola sent Ortiz's medical records to ACSC, made a demand to settle the claim, and threatened to file suit if a settlement was not reached. Thereafter, in early August 2021, Alberola exchanged communication about a possible settlement with the claims representative at ACSC who was handling the matter, Brenden Johnson. No settlement was reached.

On behalf of Ortiz, Alberola filed a lawsuit against Vazquez on August 13, 2021, which alleged personal injury from a motor vehicle accident. On September 24, 2021, the complaint was amended to add Mendez as an additional defendant. Alberola did not, at that time, inform Johnson that a complaint had been filed, although he did ask Johnson on October 11, 2021, if ACSC would disclose Defendants' address "for service of process." Johnson declined to do so on privacy grounds.

Johnson next contacted Alberola in a February 16, 2022 email, in which he inquired whether Alberola had responded to the last offer that ACSC made in August 2021. Alberola replied the same day by stating, "We rejected your offer. . . . We are in the process of obtaining an order to serve your insured by publication. The last I checked, you were refusing to disclose his whereabouts or accept service of process on his behalf through counsel. If that is incorrect, please advise." Johnson did not directly respond to that inquiry.

Instead, five days later, on February 21, 2022, Johnson suggested to Alberola that the parties engage in mediation, and Alberola agreed. On February 28, 2022, Johnson asked Alberola whether a complaint had been filed. Alberola responded on that date by providing Johnson a conformed filed copy of the complaint.

The parties attended an unsuccessful mediation in April 2022.

By June 2022, Alberola obtained orders from the trial court allowing him to serve the summons on both Vazquez and Mendez by publication.[2] After completing the publication, Alberola filed proofs of service as to both Defendants in August 2022. Alberola never informed Johnson that Defendants had been served with the summons by publication, and Defendants did not become aware of the service by publication at the time it occurred.

In November 2022, ACSC assigned a new claims representative, Peter Meza, to Ortiz's claim. After some difficulty, Meza eventually located the complaint in ACSC's file in March 2023. Using the case number, Meza then accessed the San Diego Superior Court website to check the status of the litigation. According to Meza, because of his inexperience, he did not know how to view the detailed history of the lawsuit, and he accordingly did not learn that Alberola had filed proofs of service by publication in August 2022. Meza thereafter kept in regular contact with Defendants to learn whether they had been served with the summons, but Defendants repeatedly told him that they had not been served.

On April 3, 2023, Alberola obtained entry of default against Defendants.

On June 8, 2023, still unaware of the service by publication and the subsequent defaults entered against Defendants, Meza emailed Alberola to state that ACSC would welcome settlement. Meza also asked, "Have you

---

[2] The order allowing service by publication on Vazquez was issued on February 28, 2022, which was before the parties' April 2022 mediation. The order allowing service by publication on Mendez was issued on June 13, 2022. Accordingly, Ortiz is incorrect when she states in her reply brief that "[Defendants] *wrongly* claim that 'the parties attended a mediation after the first publication order issued.'" (Italics added.)

4

done service by publication?  I can ask my insured if he will accept the time and place of service so you can do so in person.  Please advise if this would be something you would agree to do."

The record contains no indication that Alberola responded to Meza's inquiry about whether service by publication had been completed.  Instead, on June 28, 2023, Alberola asked Meza if he would be willing to provide him with Defendants' address.  Apparently under the impression that Alberola was making that request to effectuate service of the summons and complaint, Meza responded by stating, "I can ask our insured if they agree on a time and place to receive service."  Without explaining that he had already served Defendants by publication nearly one year earlier in August 2022 and had already obtained entry of default, Alberola replied, "I just need a mailing address."  Meza then provided the address on July 5, 2023.  After providing the address, Meza continued to follow up with Defendants to find out if they had been served.

On August 17, 2023, Meza sent an email to Alberola.  It stated, "We have checked the courts and find that although you have filed the summons, there is no indication you have correctly executed the publication or service of the complaint.  We even offered to provide you with our insured's home address on July 5, 2023 so you could serve our insured and move this matter through the discovery process.  We will hold our file open for 30 days from today's date and close our file if you do not respond within this time."

On October 11, 2023, Alberola filed a request that the trial court enter default judgment against Defendants, and in favor of Ortiz, in the amount of $697,730.32.  On October 11, 2023, Alberola used the address for Defendants, which Meza had provided, to serve Defendants with a request for entry of default judgment.  Upon receiving that document, Defendants forwarded it to

5

ACSC. According to Defendants, they also received by mail, on October 17, 2023, a copy of the summons and complaint, which was the first time that they received those documents.

On November 16, 2023, after holding an evidentiary hearing, the trial court entered default judgment against Defendants in the amount of $697,730.32. A representative of ACSC was present at the hearing on the request for default judgment and attempted to appear on behalf of Defendants, but the trial court concluded he did not have standing to participate. Alberola mailed entry of notice of the default judgment to Defendants on November 17, 2023.

On December 18, 2023, Defendants filed a motion to set aside and vacate the entry of default and the default judgment. Defendants sought relief pursuant to either section 473, subdivision (b) or section 473.5. In addition, the motion argued that "[e]quity requires that the default and judgment be set aside."

After considering the parties' briefing and supporting evidence, the trial court ruled that relief was warranted under section 473.5. The trial court expressly declined to rule on the other grounds for relief raised by Defendants, namely, section 473, subdivision (b) and "equity."

Ortiz appeals from the order setting aside the default and the default judgment as to both of the Defendants.

6

II.

DISCUSSION

A.    *Applicable Legal Standards*

Ortiz contends that the trial court erred in granting relief pursuant to section 473.5.[3]  Under that provision, "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."  (§ 473.5, subd. (a).)  The motion must "be accompanied by an affidavit showing under oath that the party's lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect."  (*Id*., subd. (b).)  If the trial court finds that the motion is timely,[4] and "that [the party's] lack of actual notice

---

3    Ortiz devotes a significant portion of her opening appellate brief to the argument that relief is not proper under section 473, subdivision (b).  Under that provision, a court may order relief "from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect," within a specific time frame. (§ 473, subd. (b).)  The trial court did not grant relief under section 473, subdivision (b), and Defendants do not rely on it in their respondents' brief. Because, as we will explain, the trial court was within its discretion to grant relief pursuant to section 473.5, we need not, and do not, consider whether relief *also* may have been warranted under section 473, subdivision (b). Similarly, because relief was proper under section 473.5, we need not, and do not, address the availability of relief under the trial court's inherent power to "vacate a default on equitable grounds even if statutory relief is unavailable." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)

4    The application for relief under section 473.5 was timely, and Ortiz does not argue otherwise.  A motion for relief under section 473.5 must be served and filed "within a reasonable time, but in no event exceeding the

7

in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect, it may set aside the default or default judgment on whatever terms as may be just and allow the party to defend the action." (§ 473.5, subd. (c).) "Section 473.5 reflects the understanding that if any form of service of summons does not result in actual knowledge, fundamental fairness may require that a subsequent default be set aside." (*Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 40 (*Olvera*).)

"In reviewing the [trial] court's grant of discretionary relief from default, we note: 'It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citation.] Therefore, when a party in default moves promptly to seek relief, very slight evidence is required to justify a trial court's order setting aside a default.' . . . ' " 'Even in a case where the showing . . . is not strong, or where there is any doubt as to setting aside of a default, such doubt should be resolved *in favor of the application.*' " ' " (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1444 (*Ramos*).) Thus, in applying section 473.5, the concept of actual notice has been " '*strictly construed*, with the aim of implementing the policy of liberally

---

earlier of: (i) two years after entry of a default judgment against [the party]; or (ii) 180 days after service on [the party] of a written notice that the default or default judgment has been entered." (§ 473.5, subd. (c).) Here, Defendants filed their motion for relief under section 473.5 only one month after default judgment was entered, and there is no indication that Defendants received written notice of entry of default more than 180 days prior to filing their motion.

granting relief so that cases may be resolved on their merits.' " (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 547 (*Ellard*), italics added.)

We review a trial court's decision to grant relief under section 473.5 for abuse of discretion. (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 885 (*Rios*).) Factual findings are reviewed for substantial evidence. (See *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828.)

B.  *Substantial Evidence Supports a Finding That Defendants Did Not Have Actual Notice in Time to Defend the Action*

Relief is available under section 473.5 only if "a summons has not resulted in actual notice to a party in time to defend the action." (§ 473.5, subd. (a).)

In considering whether Defendants had actual notice "*in time to defend the action*" (§ 473.5, subd. (a), italics added), we must first establish the date by which actual notice would have been effective to give Defendants time to defend themselves from entry of default and default judgment. Here, service by publication (§ 415.20) was complete on August 12, 2022, as to Vazquez, and on August 19, 2022, as to Mendez. Defendants had 30 days from those dates to file a responsive pleading. (§ 412.20, subd. (a)(3).) Failure to do so within that time frame permitted Ortiz to obtain entry of default. (§ 585, subd. (c) ["where the service of the summons was by publication, upon the expiration of the time for answering, and upon proof of the publication and that no [responsive pleading or qualifying motion] has been filed, the clerk, upon written application of the plaintiff, shall enter the default of the defendant"].) Thus, to be able to defend themselves, Defendants would require actual notice by mid-September 2022.

Logically, the "actual notice" that would have given Defendants an opportunity to defend themselves was notice, by mid-September 2022, that they had been served with the summons and were required to file a

9

responsive pleading. (See *Rios, supra*, 65 Cal.App.5th at p. 885 [specific inquiry was whether the party seeking relief under § 473.5 "had actual notice of [plaintiff's] lawsuit in time to file an answer or other response to the complaint and avoid the entry of a default."]; *Ellard, supra*, 94 Cal.App.4th at p. 548 [defendants who "knew their answer was due and chose not to respond" were not entitled to relief].)

In her appellate briefing, Ortiz repeatedly emphasizes that Defendants knew, by June 2022, that a complaint had been filed against them. However, knowledge that a complaint was filed is not the same thing as knowledge that service was carried out. Until service of the summons, a defendant has no obligation to respond and does not need to take steps to defend the action. (See *Olvera, supra*, 232 Cal.App.3d at p. 41 [as part of an analysis of whether the trial court was within its discretion to grant relief under § 473.5 even though defendant knew a lawsuit had been filed, the court noted that, until service of the summons, the defendant "was under no obligation to respond"].)[5] As a result, when a defendant has "fragmentary or unconfirmed" information about a lawsuit, but does not learn about service of the summons, the defendant is not precluded from obtaining relief under section 473.5. (*Olvera*, at p. 40 ["if the court has acquired jurisdiction, i.e.,

---

[5] In her reply brief, Ortiz argues that actual notice that a complaint was filed precludes Defendants from obtaining relief under section 473.5 because Defendants could have filed a responsive pleading even *before* they were served with the summons. Specifically, Ortiz asserts that "[t]ime to respond to a complaint begins when the complaint is filed." However, she provides no authority for that assertion. A defendant has thirty days from service of the summons to file a responsive pleading. (§ 412.20, subd. (a)(3).) "Until summons is served, there is no need to respond; a defendant may believe that the action will not be pursued." (*Olvera, supra*, 232 Cal.App.3d at p. 40.)

10

summons has been served, but service of summons has not resulted in actual notice to a defendant, although the defendant has acquired actual knowledge of the action from another source, this does not preclude a defendant from seeking relief under section 473.5"].) Thus, to determine whether Defendants obtained "actual notice" within the meaning of section 473.5, we ask whether they had actual notice that a responsive pleading was due in time to defend the action (i.e., by mid-September 2022), not whether they knew by then that a complaint had been filed.[6]

The undisputed evidence at trial established that Defendants did not have actual notice that they had been served with the summons in time to file a responsive pleading by mid-September 2022. In the declarations submitted by Defendants, they both explained that they do not "read or write English with ease" and their primary language is Spanish. Defendants explained that, in or about June 2022 they found out from ACSC that Ortiz had filed a complaint against them. But neither they, nor any of their family members, saw the newspaper publication of the summons in July and August 2022. Defendants also confirmed that rather than communicating anything to them about service by publication, ASCS continued to ask them, through

---

[6] We note that Ortiz's opening appellate brief states that "[Defendants] and their insurer admit to having actual notice in time to respond to the complaint," and that "the [trial] court found the same." More specifically, Ortiz states that "the [trial] court found that [Defendants'] insurer had actual notice 14 months before [Defendants'] defaults were entered, and the [trial] court found that [Defendants] had 10 months of actual notice before their defaults were entered." In light of the undisputed facts in the record, this statement is nonsensical unless Ortiz is contending that the concept of "actual notice" in section 473.5 is actual notice that a lawsuit *has been filed*, rather than that the summons *has been served* and a responsive pleading is due. However, as we have explained, that contention lacks merit.

11

October 2023 whether they had been served with the summons and complaint. Defendants explained that the first time they received the summons and complaint was when those documents were mailed to them in October 2023.

Although the undisputed evidence shows that Defendants did not learn they had been served with the summons in time to file a responsive pleading, Ortiz argues that ACSC's actual notice should be imputed to Defendants. Ortiz's opening appellate brief extensively analyzes case law in an attempt to establish that when a party brings a claim for relief under section 473.5, the knowledge of the party's insurer should be imputed to the party in deciding whether the party had actual notice in time to defend the action.[7] However, we need not, and do not, decide whether under certain circumstances, actual notice to an insurer that a responsive pleading is due may ever be imputed to

---

[7]    Ortiz relies primarily on case law arising under section 473. Those cases hold that, in certain circumstances, it may be appropriate to deny relief from default when a party has relied on an insurer to defend a lawsuit and the insurer engaged in inexcusable neglect or conscious disregard of procedural requirements. (*Don v. Cruz* (1982) 131 Cal.App.3d 695, 701–702; *Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1149; but see *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 820–821 [disagreeing with *Don*]; see also *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 700 [discussing and harmonizing the case law].) Ortiz also relies on *Candelaria v. Avitia* (1990) 219 Cal.App.3d 1436, 1445. Although that case concerns relief under both section 473 and section 473.5 (*id.* at p. 1440), it does not discuss whether, under either of those statutes, an insurer's knowledge that a responsive pleading is due should be imputed to the insured. Indeed, the insurer in *Candelaria* did not learn that service on the defendant had been completed by publication because the defendant had disappeared and the insurer had denied coverage and ceased communication with plaintiff's counsel. (*Id.* at 1445.)

12

a party who seeks relief under section 473.5.[8]  The evidence in this case supports a finding that ACSC did *not* have actual notice that Defendants had been served by publication in time for Defendants to file a responsive pleading.

As we have detailed, Johnson and Meza both stated that they did not know that service by publication had been carried out.  More specifically, Johnson was the claims representative at the time of service by publication in July and August 2022.  Although Alberola told Johnson on February 16, 2022, that he was "in the process of obtaining an order to serve your insured by publication," Johnson declared that he did not learn that Alberola eventually received such an order or that service by publication was eventually carried out.

When Meza took over as claims representative in November 2022, it was already too late for Defendants to file responsive pleadings, as the deadline to file those pleadings was in mid-September 2022.  Nevertheless, Meza's actions reinforce that ACSC continued to be unaware that service by publication had already been completed.  For instance, on June 8, 2023, Meza asked Alberola, "Have you done service by publication?  I can ask my insured if he will accept the time and place of service so you can do so in person."

---

[8]     We note that were we to reach the issue of whether an insurer's knowledge may be imputed to an insured who is seeking relief under section 473.5, our analysis would necessarily have to consider the applicability of case law holding that "[t]he phrase 'actual notice' in section 473.5 'means genuine knowledge of the party litigant and does not contemplate notice imputed to a principal from an attorney's actual notice.' " (*Tunis v. Barrow* (1986) 184 Cal.App.3d 1069, 1077, quoting *Rosenthal v. Garner* (1983) 142 Cal.App.3d 891, 895.)

13

Meza offered again on June 28, 2023 to "ask our insured if they agree on a time and place to receive service."

Ortiz tries to establish that ACSC had actual notice by relying on an August 17, 2023 email in which Meza stated to Alberola, "We have checked the courts and find that although you have filed the summons, there is no indication you have correctly executed the publication or service of the complaint. We even offered to provide you with our insured's home address on July 5, 2023 so you could serve our insured and move this matter through the discovery process." Ortiz interprets this email as establishing that Meza knew of the service by publication as of that date, but that he believed it was not "correctly executed." In our view, it is a stretch to afford that meaning to Meza's words, given the entire context of the email and the parties' other communications.[9] However, even if that is what Meza meant, it is ultimately irrelevant whether Meza knew, as of August 17, 2023, that Alberola had completed service by publication. As we have explained, the relevant inquiry is whether Defendants had actual notice that the summons had been served in time to file a responsive pleading in mid-September 2022. Evidence of

---

[9] In its order granting relief to Defendants, the trial court characterized the August 17, 2023 email as follows: "In August 2023, [ACSC] takes the position that [Ortiz] did not correctly conduct the service by publication such that it is invalid." As we have noted, it is a stretch, in our view, to afford that meaning to Meza's words. We observe that the trial court's description of the August 17, 2023 email may have been impacted by Alberola's erroneous quotation of that email in his declaration. Alberola incorrectly declared that the email stated, " '[W]e have checked the courts and find that although you have filed the summons, there is no indication you have correctly executed the publication *for* service of the complaint.' " (Italics added.) In fact, the email stated, "We have checked the courts and find that although you have filed the summons, there is no indication you have correctly executed the publication *or* service of the complaint." (Italics added.)

14

Meza's possible knowledge in August 2023 does nothing to establish what ACSC knew by mid-September 2022.

Ortiz also relies on a statement in Alberola's declaration to try to establish that ACSC did, in fact, have notice that Defendants had been served by publication but "consciously chose not to defend the action because it believed a default judgment would not be enforceable against it." Specifically, Alberola declared that around February 2023, Meza told him that Ortiz "would not be able to collect anything from ACSC with only a default judgment because a default judgment did not require that the damages be proven." However, Alberola did not identify the context in which Meza made that statement, and he did not state that Meza was aware Defendants had been served. Indeed, it is unlikely that Meza had such knowledge at the time because several months later, on June 8, 2023, he asked Alberola if he had "done service by publication" and offered to make Defendants available for personal service. Moreover, again, even if Ortiz could establish that Meza learned at some point after he took over the matter in November 2022 that service by publication had been completed, that does nothing to prove actual notice in time to file a responsive pleading by mid-September 2022.

Finally, Ortiz relies on the fact that, on February 16, 2022, Alberola told Johnson, "We are in the process of obtaining an order to serve your insured by publication." However, statement of an intention to obtain an order to *eventually* allow service by publication is not the same thing as actually completing service, which did not happen until August 2022.

In sum, regardless of whether actual notice to ACSC may be imputed to Defendants (which is an issue we do not decide), substantial evidence

15

supports a finding that Defendants did not have actual notice in time to defend the action.

C.     *The Additional Statutory Prerequisites for Relief Under Section 473.5 Were Satisfied Because the Trial Court Found That Defendants' Lack of Actual Notice in Time to Defend Was Not Caused by Avoidance of Service or Inexcusable Neglect*

In addition to finding that Defendants lacked actual notice in time to respond to the complaint, to grant relief under section 473.5 the trial court was required to find that Defendants' "lack of actual notice in time to defend the action was not caused by [their] avoidance of service or inexcusable neglect." (§ 473.5, subd. (c).) The trial court made an express finding that Defendants did not engage in inexcusable neglect. The trial court further expressly found that Defendants did not engage in avoidance of service. Ortiz does not present any argument challenging those findings by attempting to show that they are not supported by substantial evidence.

Instead, Ortiz's sole argument with respect to those findings is a quibble with how the trial court worded its finding regarding the lack of inexcusable neglect. Specifically, the trial court's order states, "the Court concludes that while it was somewhat neglectful to fail to respond to the lawsuit sooner, it was not *inexcusably* so." According to Ortiz, the trial court should have phrased the inquiry as whether Defendants' *lack of actual notice* resulted from inexcusable neglect, not whether the Defendants *failure to respond to the complaint* resulted from inexcusable neglect. Ortiz contends that the inquiry employed by the trial court was more similar to the inquiry required for relief under section 473, subdivision (b) (see § 473, subd. (b) [allowing the court to grant relief "from a judgment, dismissal, order, or other proceeding taken against [a party] through his or her . . . excusable neglect"]), rather than the inquiry required for relief under section 473.5 (see § 473.5, subd. (c)) [requiring a finding that the party's "lack of actual notice in time to

16

defend the action was not caused by his or her avoidance of service or inexcusable neglect"]).

We are not persuaded that the subtle distinction Ortiz raises makes any difference in this case. Here, the evidence shows that the Defendants failed to file a timely responsive pleading because they did not have actual notice that they had been served with the summons. In that context, an inquiry into whether inexcusable neglect caused Defendants' failure to timely respond to the summons is the same as an inquiry into whether inexcusable neglect caused Defendants' lack of actual notice that they had been served with the summons and had a responsive pleading due.

In sum, based on the findings that Defendants lacked actual notice in time to defend the action and did not avoid service or engage in inexcusable neglect, the statutory prerequisites for obtaining relief under section 473.5 were satisfied. In light of the " 'the policy of the law to favor, whenever possible, a hearing on the merits' " (*Ramos, supra*, 223 Cal.App.4th at p. 1444), the trial court was well within its discretion to grant relief.

## DISPOSITION

The order granting relief from default and default judgment is affirmed. Defendants shall recover their costs on appeal.

17

                                                    IRION, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.