Filed 7/13/23  SDTJ v. Chang CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SDTJ, LLC, | D080402 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00030988-CU-BC-CTL) |
| QILIN CHANG et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

FitzGerald Kreditor Bolduc Risbrough, Sherilyn Learned O'Dell and Pfrancez C. Quijano for Defendants and Appellants.

Higgs Fletcher & Mack, John Morris and Steven M. Brunolli for Plaintiff and Respondent.

Qilin Chang and his wife, Chungling Wan, appeal from an order denying their motion to set aside entry of default and a default judgment that was entered against them and in favor of plaintiff SDTJ, LLC (SDTJ). They assert that the summonses were not properly served on them, that they did not respond due to an excusable mistaken belief that the underlying issue had been resolved, and that public policy dictates in favor of setting aside the default. We disagree and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

SDTJ entered into a single-tenant lease for a commercial space with Golden Flavor LP in December 2016. The lease agreement specified that the leased space was to be used as a franchised Golden Corral restaurant. The Golden Flavor CEO, Zhenfei Xiang, also executed an individual Guaranty of Lease, as required by the lease agreement.

Worlden EC, Inc. (Worlden) acquired an ownership interest in the franchised restaurant and took over the lease from Golden Flavor in June 2018. The parties—SDTJ, Golden Flavor and Worlden—executed a written Assignment of and First Amendment to Lease Agreement (the Amended Lease). Chang signed the Amended Lease as owner of Worlden, and he and his wife, Wan, also executed a Guaranty of Lease (the Guaranty), as required by Article 2.7 of the Amended Lease. Pursuant to the Guaranty, Chang and Wan agreed to be jointly and severally liable for all obligations and liabilities of Worlden, the tenant, under the terms of the Amended Lease, "including without limitation the obligation to pay rent thereunder."

Chang and Wan's home address on Red Gum Drive was listed as "Tenant's Address for Notices" in the Amended Lease, and the Guaranty stated, "any notice, request, demand, instruction or other communication must be in writing and must be delivered in the manner provided in the

2

Lease for delivery of notices." The Red Gum Drive address was also listed as "Guarantors' Address" under Chang and Wan's signatures on the Guaranty.

Chang and Wan operated the restaurant successfully and kept up on payments under the Amended Lease for nearly two years. But, in March 2020, Worlden was forced to cease operations at the Golden Corral restaurant due to emergency orders issued by the State of California as a result of the emerging COVID-19 pandemic. Further, because the restaurant was a buffet style restaurant, they were not able to operate on a take-out basis and remained closed for an extended period. Unable to generate revenue, Worlden stopped making its regular rent payments under the Amended Lease. Worlden did make some payments in April and May, but by July 2020, they were approximately $45,000 in arrears.

On July 13, 2020, SDTJ's attorneys sent Chang and Wan a demand letter, seeking payment of the full amount owed pursuant to the Guaranty. In the letter, SDTJ asserted that the Guaranty was unconditional, that Chang and Wan were precluded from raising defenses based on the COVID-19 pandemic, and that they would be responsible for attorney fees if SDTJ were to prevail in an action based on the Guaranty. Chang and Wan did not make any further payment at that time and, by September 2020, Worlden owed over $75,000 on the lease.

On September 3, 2020, SDTJ filed a complaint against Chang and Wan[1] for breach of the Guaranty (the Complaint). In the Complaint, SDTJ alleged that Worlden owed "back rent in excess of $90,000," and that Chang

---

[1]     The Complaint also named Zhenfei Xiang and DOES 1 through 50. Xiang was subsequently dismissed and only Chang and Wan remain parties to the present appeal.

3

and Wan had breached the Guaranty by failing to pay the rent owed. And, SDTJ alleged further, that Chang and Wan had agreed, in the Guaranty, to pay all costs and expenses of enforcing the Guaranty, including attorney fees. SDTJ sought damages "for outstanding rent owed [and] future rent owed through the term of the Lease," as well as attorney costs and fees.

On September 28, 2020, Worlden made a payment of $75,000 to SDTJ, bringing the account balance to approximately $615.[2] But, Worlden did not make any further payments over the next couple of months, and the balance grew to over $75,000 by early December, in part due to the accrual of insurance and property tax payments. Meanwhile, SDTJ's attorneys continued to pursue a settlement with Worlden, Chang, and Wan.

Around the same time, Chang and Wan hired a contractor to do "extensive repairs" on their home on Red Gum Drive. They moved out for "several weeks" while the repairs were being conducted. A licensed process server attempted to serve summonses on Chang and Wan at the home in December, while the repairs were underway.

The declaration of diligence included in the summonses indicates that the process server went to the house on Red Gum Drive on Thursday, December 10, 2020, at 7:00 in the evening. The house was dark, and no one was home. The process server returned to the home on Friday just after the noon hour and spoke with "Jaden Doe." Jaden said that Chang and Wan were not in, that they would be in "tomorrow before noon" and, "if not, he will accept for them." The process server returned the next day at 9:25 in the

---

[2] In a separate pleading, Chang and Wan asserted the remaining $615.59 was the result of CAM (Common Area Maintenance) charges that Worlden may not have been aware of.

4

morning and served the summons for both Chang and Wan via substitute service on Jaden. The process server described Jaden as an Asian male in his 30's and as a "Co-Occupant" of the home. According to Chang and Wan, Jaden was not actually a co-occupant of the home, and was, instead, a member of the construction crew.

Neither Chang nor Wan responded to the Complaint. SDTJ filed a request for entry of default judgment against Chang and Wan on February 17, 2021. It was rejected, so SDTJ filed a second corrected request for entry of default judgment on March 12, 2021. SDTJ mailed copies of both filings to Chang and Wan at the Red Gum Drive address but, once again, Chang and Wan did not respond. The trial court accepted the second request, and, on April 22, 2021, the court issued a default judgment, in favor of SDTJ and against Chang and Wan, awarding $90,000 in damages, $629.90 in costs and $30,380 in attorney fees to SDTJ.

Approximately three months later, on July 28, 2021, Chang and Wan moved to set aside the default judgment pursuant to Code of Civil Procedure[3] section 473, subdivisions (b) and (d). They asserted the judgment was void because summonses were improperly served, and that their mistaken belief and understanding of the circumstances justified setting aside entry of default and the default judgment.

In a declaration in support of the motion, Chang admitted that he "was told that someone had dropped off some documents," but asserted that he "did not understand why the documents were there because [he] knew [he] had never been served." He said he saw the Complaint "in the documents left

---

3    All further unspecified statutory references are to the Code of Civil Procedure.

5

with Jaden," but thought it was a mistake because the Complaint was filed in early September, before he had paid off most of the overdue rent. He called into a hearing in the case in June 2021 but "did not understand fully what was happening" because he had never been served. He thought the entire matter was a mistake and believed there was a rule that landlords could not sue for rent during the shutdown.

In the meantime, Chang and Wan caught up on rent and continued to operate the business. On November 5, 2021, SDTJ filed a writ of execution indicating a credit on the judgment in the amount of $88,806.49. The amount remaining due on the judgment was approximately $33,636.48; essentially, the attorney fees and costs plus interest.

The trial court held a hearing on Chang and Wan's motion to set aside entry of default and the default judgment on February 4, 2022. The court issued a tentative ruling that same morning. In the tentative, the court first noted that Chang and Wan asserted they were improperly served. The court then quoted section 473.5, subdivision (a),[4] and concluded that improper service was not a basis to set aside the default or the default judgment because Chang admitted that he had actual notice of the judgment. Next, the court noted that, in the alternative, Chang and Wan sought discretionary relief under section 473, subdivision (b) based on their alleged mistaken belief that they did not need to respond to the lawsuit. The court declined to

---

[4]    Section 473.5, subdivision (a) provides: "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."

6

grant relief on that ground as well, finding that the alleged mistake was not reasonable or excusable.

Chang and Wan each filed a declaration that same day. Seemingly in contradiction to his earlier declaration, Chang stated, "I do not recall Jaden informing me specifically about the plaintiff's, SDTJ, LLC., complaint. When I visited the house, I saw that there was a pile of mail and documents left [for] me. It just so happens that SDTJ's complaint was included in that pile." Wan's declaration stated only, "I did not go to the house to sort through the mail and documents left in the house. I have never seen the documents left by Plaintiff's, SDTJ, LLC."

The hearing on the motion was not reported and, thus, there is no transcript in the record on appeal. After hearing argument, the trial court confirmed its tentative ruling and denied the motion in a written order that was essentially identical to its prior tentative ruling.

Chang and Wan timely appealed.

## DISCUSSION

Chang and Wan assert the trial court erred in denying their motion to set aside the default and default judgment. They contend that the complaint was not properly served, that the default judgment is therefore void, and that the trial court erred by relying on section 473.5 to preclude relief on that basis. They allege further that the trial court abused its discretion by failing to grant relief under section 473, subdivision (b), and that public policy

7

dictates in favor of setting aside the default judgment, in part because they have valid defenses to the Complaint.[5] We are not persuaded.

I. *The Judgment Was Not Void Because of Insufficient Service of Process*

We first consider whether the judgment was void because, as Chang and Wan allege, substitute service of the summonses was not effective.

Section 473, subdivision (d) provides that the trial court " 'may . . . on motion of either party after notice to the other party, set aside any void judgment or order.' " Compliance with the statutory procedures for service of process is necessary to establish personal jurisdiction over a party. (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 369 (*Kremerman*).) "[I]f a default judgment was entered against a defendant who was not served with a summons as required by statute, the judgment is void, as the court lacked jurisdiction in a fundamental sense over the party and lacked authority to enter judgment." (*Id.* at p. 370.) The threshold question of whether a judgment is void because of improper service of process is a question of law that this court reviews de novo. (*Id.* at p. 369; accord *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858.) While the trial court "retains discretion to grant or deny a motion to set aside a void judgment" under section 473, subdivision (d), it does *not* have discretion "to set aside a judgment that is not void" in the first instance. (*Kremerman, supra,* at p. 369.)

_____

[5] Chang and Wan also asserted, for the first time at oral argument, that the default judgment was void under section 580 because the relief granted exceeded the amount demanded in the complaint. It is a well settled rule of appellate practice that appellants must raise all claims and support them with meaningful argument and citation to authority in the opening brief; we will not address claims raised for the first time at oral argument. (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555; *Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1511; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226.)

As in the trial court, SDTJ argues the judgment was not void as a matter of law because the summonses were appropriately served on both Chan and Wan through substituted service on Jaden. We agree. Section 415.20, subdivision (b) addresses substitute service and provides, in relevant part:

> "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left."

The statute "shall be 'liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant.' " (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544 (*Ellard*).)

Here, a licensed process server made three attempts to serve Chang and Wan at their home address on Red Gum Drive—the same address that was listed as the address to use for notice in both the Amended Lease and the Guaranty—but Chang and Wan were not there on any of the three attempts. "Ordinarily, two or three attempts at personal service at a proper place and with correct pleadings should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." (See *Kremerman, supra,* 71 Cal.App.5th at p. 373.) Accordingly, the process server met the reasonable

diligence requirement, and opted to serve Chang and Wan via substitute service, as permitted by section 415.20, subdivision (b).

The process server did so by leaving the summons with Jaden. There is no dispute that Jaden was over 18 years of age, that he was at the residence on two occasions, that he seemed to know Chang and Wan, and that he agreed to accept service on their behalf. Thus, he appeared to be either a member of or in charge of the household while Chang and Wan were away. Chang and Wan argue that Jaden was part of the construction crew, and not a co-occupant, but the plain language of section 415.20 is to be liberally construed (see *Ellard, supra,* 94 Cal.App.4th at p. 544), and does not require that the individual receiving substitute service be an *actual* member of the household. It was enough that Jaden appeared to be in charge of the household in Chang and Wan's absence. (See *Ludka v. Memory Magnetics International* (1972) 25 Cal.App.3d 316, 320–321 [declaration that process server left documents with unidentified individual in reception area was sufficient to establish substitute service].) Chang and Wan agreed to receive notices related to the Amended Lease and Guaranty at the Red Gum Drive address and cannot now avoid service simply by moving out and leaving no one else in charge, such that there was no "member of the household" available.

And, as the trial court noted, Chang admitted that he was told that someone "had dropped off some documents" when he visited the house to check on the repairs that same month, and that he "saw the complaint in the documents left with Jaden." Although he now contends otherwise, Chang's own declaration establishes that he did have actual notice that the

10

summonses and Complaint were hand-delivered to Jaden at the address listed in the Amended Lease and Guaranty in December.[6]

Chang and Wan assert the trial court did not make an express finding regarding the effectiveness of the substitute service, and instead found that relief was not warranted because Chang had actual notice of the lawsuit pursuant to section 473.5, subdivision (a). The trial court included this same reasoning in its tentative order and, presumably, the parties had a chance to address it at the hearing on the motion, but in the absence of a reporter's transcript, we are unable to decipher whether the issue was raised or addressed by the court. Regardless, because our review of whether the judgment is void in the first instance is de novo, we need not rely on the trial court's reasoning. (See *Tackman v. Kenney* (2010) 187 Cal.App.4th 175, 182 [on de novo review, appellate court generally reviews "a trial court's ruling, not its reasoning"]; *Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 38–39 ["on appeal we may consider whether the order was supported by any of the grounds raised by the parties"].)

On our own independent review, we conclude Chang and Wan were effectively served through substitute service on Jaden at their place of residence, and, therefore, the default judgment was not void for lack of

---

[6] In a related argument, Chang and Wan assert they did not have actual notice despite receiving the documents because they did not speak English well and had only been in the United States for a few years. The contention is belied by the fact that they had signed a sophisticated lease agreement and guaranty, both in English.

11

service.  Accordingly, the trial court did not have discretion to set aside the default judgment under section 473, subdivision (d).[7]

II. *The Trial Court Did Not Abuse Its Discretion by Declining to Set Aside the Default Judgment Based on Mistake, Inadvertence, Surprise, or Excusable Neglect*

We turn next to Chang and Wan's assertion that the trial court erred by failing to grant them discretionary relief based on mistake, inadvertence, surprise, or excusable neglect pursuant to section 473, subdivision (b).

Section 473, subdivision (b) provides, in relevant part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."  Unlike subdivision (d), this portion of subdivision (b) is a purely discretionary provision and, thus, we review the trial court's decision solely for an abuse of that discretion.  (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 694 ["This part of section 473 is recognized as invoking the trial court's discretion, and the judgment of the trial court ' "shall not be disturbed on appeal absent a clear showing of abuse." ' "].)

At the same time, the California Supreme Court has counseled, "the trial court's discretion is not unlimited and must be ' "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' "  (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233.)  "Section 473 is often applied liberally where the party in

---

[7]    Chang and Wan also assert they are entitled to equitable relief from the judgment based on the "false recital of the service."  This argument fails for all the same reasons that we conclude the judgment was not void for insufficient service.

12

default moves promptly to seek relief," and, "because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default." (*Ibid*.) "Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Ibid*.; accord *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 (*Zamora*) ["Where the mistake is excusable and the party seeking relief has been diligent, courts have often granted relief pursuant to the discretionary relief provision of section 473 if no prejudice to the opposing party will ensue."]; *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1444 [policy of the law favors a hearing on the merits].)

Here, despite this somewhat heightened standard, we have no trouble concluding the trial court did not abuse its discretion in denying Chang and Wan's request for relief. As the trial court explained, it is well established that where a party requests relief from default based on the discretionary provisions of section 473, subdivision (b), the error must have been excusable. (See *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007.) " 'Although the policy of the law is to favor a hearing on the merits of a case, courts are not required to set aside default judgments for defendants who flagrantly ignore the responsibility to present a defense. The burden of a party who has had a default entered against him is not limited to merely articulating the existence of a meritorious case. The defendant must also demonstrate a satisfactory excuse for not responding to the original action in a timely manner.' " (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503–504 (*Cruz*).) "The standard is whether ' "a reasonably prudent person under the same or similar circumstances" might have made the same error.' " (*Solv-All,* at p. 1007; accord *Zamora, supra,* 28 Cal.4th at p. 258 ["In

13

determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent person under the same or similar circumstances" might have made the same error.' "].)

Chang and Wan have not established that their failure to respond to the summons and Complaint was excusable, or that a reasonably prudent person would have made the same error under similar circumstances. As they did in the trial court, Chang and Wan assert that Chang simply assumed the Complaint "had been taken care of" because he had made a payment in late September, after the Complaint was filed. But SDTJ's counsel averred that at least some balance remained outstanding, and that Worlden was significantly in arrears again by December when the summonses were served. The ledgers SDTJ submitted in support of their request for the default judgment support that claim. Moreover, the Complaint also sought attorney fees, consistent with the demand letter SDTJ had previously sent to Chang and Wan. Thus, Chang and Wan had reason to believe the matter was not resolved by the single $75,000 payment. Despite this, there is no indication in the record that Chang or Wan made any attempt to reach out to his SDTJ, or their own counsel, to confirm that the dispute had been resolved. As the trial court concluded, "[r]easonable prudence counsels against ignoring a summons and complaint."

Chang and Wan assert further that Wan provided a declaration stating she did not go to the house and had never seen the documents left by the process server. As an initial matter, the declaration was not submitted until the day of the motion hearing, and the trial court's order at least suggests that the trial court did not consider it. (See *Cruz, supra,* 146 Cal.App.4th at pp. 503–504 [party seeking to set aside default must present evidence of excusable mistake]; *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537

14

[general rule of motion practice is that new evidence is not permitted with reply papers].)  Regardless, Chang admitted looking through the documents and would have seen the summons for Wan as well.  Notably, Wan does not acknowledge that her husband did go through the documents, nor does she affirmatively state that she did not know about the summons or the Complaint.  Wan cannot avoid the litigation simply by refusing to look at the documents left for her at the address listed in the Amended Lease and Guaranty.

Next, Chang and Wan assert that they believed they were protected from litigation based on an emergency ordinance that relieved commercial tenants of the obligation to pay rent while unable to operate due to the pandemic.  But, again, the Complaint was based on the Guaranty, not the Amended Lease, and the demand letter that SDTJ sent to Chang and Wan noted that defenses related to the COVID-19 pandemic were not available to Chang and Wan under the unconditional Guaranty.  Thus, at the very least, Chang and Wan should have known there was a dispute between them and SDTJ as to the impact of any such ordinance on their obligations as guarantors.  Regardless, the ordinance did not relieve Chang and Wan from their obligation to *respond* to the Complaint.

Chang and Wan rely on *Bernards v. Grey* (1950) 97 Cal.App.2d 679, to assert relief was warranted, but *Bernards* does not support their position.  There, the defendant, the administrator of an estate, was admittedly served with a summons and complaint while standing outside the courthouse after a hearing on related matters.  (*Id*. at p. 682.)  He alleged that he placed the documents in his briefcase, "merely noting that they referred to the present action, and 'through inadvertence, did not call to counsel's attention the papers he had received and was not at said time aware of their nature.' "

15

(*Ibid*.) Here, Chang admits to having seen the Complaint and does not contend that he did not understand the nature of the Complaint; he merely asserts he thought that the matter was resolved, but as we have explained, that did not excuse him from failing to respond.

Finally, Chang and Wan assert they have valid defenses to raise, and that this court should consider those defenses in deciding whether to affirm the trial court's ruling. They rely on *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, in which the appellate court explained that although rulings on motions for relief from default are reviewed for an abuse of discretion, " 'it is the policy of the law to favor, whenever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial on the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made.' " (*Id*. at pp. 907–908.) But, here, Chang and Wan fail to establish a substantial defense on the merits. (See *Singman v IMDB.com, Inc.* (2021) 72 Cal.App.5th 1150, 1151 (*Singman*) [Appellant bears the burden of establishing legal error through citations to the record and relevant legal authority].)

First, they assert that SDTJ waived its right to declare a forfeiture of the lease by accepting rent after the original breach occurred. (See, e.g., *EDC Associates, Ltd. v. Gutierrez* (1984) 153 Cal.App.3d 167, 171 [holding a landlord waived its right to declare forfeiture and gain possession of a leased property by accepting late rent payments].) As we have explained, SDTJ did not seek forfeiture of the Amended Lease; it sought to enforce the Guaranty against Chang and Wan as individuals. Moreover, SDTJ did credit Chang and Wan for the rent payment made in September. SDTJ filed a writ of execution and a memorandum of costs after judgment, acknowledgment of

16

credit, and declaration of accrued interest in November 2021, in which SDTJ acknowledged that it had received and applied $90,000 against the judgment. SDTJ asserted that Chang and Wan remained responsible for $32,203.42 in principal, and $1,570.47 in interest. Thus, it appears SDTJ credited Chang and Wan for the rent that was paid but continued to seek payment of the portion of the judgment reflecting the attorney fees incurred to enforce the Guaranty. Chang and Wan present no authority indicating SDTJ forfeited its right to recoup attorney fees, and thus, have not established that the eventual, albeit delayed, payment of rent would serve as a complete defense to the Complaint.

Second, Chang and Wan assert defenses based on their inability to operate the restaurant during the COVID-19 pandemic. They rely on San Diego County Ordinance No. O-21177, an emergency ordinance passed by the County of San Diego on March 25, 2020, establishing a temporary moratorium on evictions due to the nonpayment of rent caused by a decrease in revenue due to the COVID-19 pandemic. Contrary to their assertions, though, the ordinance did not create a forbearance on the obligation to pay rent; it merely placed a moratorium on *evictions*, which SDTJ did not seek. Further, the ordinance does not appear to exclude actions against a guarantor for rent owed, and Chang and Wan present no authority indicating that it does. (See *Singman, supra,* 72 Cal.App.5th at p. 1151.)

Finally, Chang and Wan assert, more generally, that the COVID-19 shut down frustrated the commercial purpose of the lease. The only authority they provide is a 1944 case in which a lessee of neon lights attempted to return the lights and terminate the lease based on frustration of purpose after an emergency war measure ordered the cessation of all outside lighting from sunset until sunrise. (*20th Century Lites, Inc. v. Goodman*

17

(1944) 64 Cal.App.2d Supp. 938, 940.)  Here, Chang and Wan did not attempt to return the leased premises and terminate the lease.  Rather, it is undisputed that Worlden maintained occupancy during the shutdown, with intentions to re-open the restaurant when feasible.  Moreover, here, the lawsuit was not based on the lease, but rather on Chang and Wan's personal Guaranty, the very purpose of which was to ensure payment of rent in the event that Worlden did not fulfill its obligations under the Amended Lease. Chang and Wan present no authority indicating they would be likely to prevail under a frustration of purposes theory under these facts.  (See *Singman, supra,* 72 Cal.App.5th at p. 1151.)

In sum, we conclude that Chang and Wan have not established that their failure to respond to the summons and Complaint was excusable, or that they had a substantial defense to the claims raised in the Complaint. Accordingly, we cannot conclude that the trial court abused its discretion in denying them discretionary relief from the default or the default judgment.

### DISPOSITION

The order is affirmed.  Respondent SDTJ is entitled to costs on appeal.


KELETY, J.


WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.


18